**Glen ATKINSON, Appellant,**

v.

**Otis BOWEN, Secretary of the Department of Health and Human Services of the United States of America, Appellee.**

No. 88–1915.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 15, 1988.

Decided Dec. 20, 1988.

Julie A. Frank, Omaha, Neb., for appellant.

Daniel A. Morris, AUSA, Omaha, Neb., for appellee.

Before HEANEY and BEAM, Circuit Judges, and LARSON,* Senior District Judge.

HEANEY, Circuit Judge.

Glen Atkinson appeals the decision of the district court denying his application for disability insurance benefits under Title II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* We reverse.

BACKGROUND

Glen Atkinson is a 44–year–old man with an eighth-grade education. His vocational experience includes sixteen years as a trash collector for Fremont Sanitation and approximately one to two years as a janitor at Creighton University. He terminated his employment with these employers due to hip and back impairments.

Testimony and evidence received at the administrative hearing reveals that Atkinson has organic brain damage, a full-scale I.Q. between 71 and 75, and chronic low grade depression. He also has a history of alcoholism. Atkinson's physical incapacities include lumbar disc disease, a total right hip replacement and degenerative arthritis which causes Atkinson significant pain.

Atkinson's treating physician, Thomas C. Bush, M.D., characterized Atkinson as "grossly incapacitated" and described his back and hip impairments as severe degenerative changes. Two consultative physicians, Dr. Michael T. O'Neil and Dr. William R. Hamsa, confirmed Atkinson's physical impairments and noted that Atkinson was incapable of any type of manual labor, and that he could not perform jobs requiring prolonged standing, walking, bending, lifting or stooping. Dr. Hamsa felt Atkinson's physical limitations did not preclude sedentary work. Dr. O'Neil felt Atkinson was not suited for semi-skilled work due to his limited education.

At an administrative hearing, Atkinson testified that he suffers from constant pain in both his back and hip which interferes with his ability to sleep and to concentrate.

As a result, he takes Tylenol with Codeine four times a day for his pain. Atkinson estimated that he could stand for 15 minutes, walk approximately 20 feet and sit for 15 to 20 minutes before experiencing back and hip pain. Atkinson's only daily activity appears to be watching television.

Atkinson also presented evidence of his psychological impairments to support his claim for disability benefits. Dr. Paul Fine, Associate Professor and Director of the Child & Family Psychiatry Services at Creighton University, reported that he had worked with the Atkinson family for approximately 5 years. He described Atkinson as a recovering alcoholic with a chronic back problem who suffers from depression as a result of being out of work. Dr. Fine wrote:

> I have no doubt that, psychiatrically, Glen Atkinson is in need of rehabilitation services, he would make constructive use of any services * * *, and [he] is the type of well motivated person for whom rehabilitation is possible.

Robert C. Townsend, a clinical psychologist, corroborates Dr. Fine's report. He stated:

> Since he has been unable to work [at Creighton Dental School] and has been unemployed, Mr. Atkinson appears to become more withdrawn, irritable and depressed to a mild to moderate degree. *Being employed and productively contributing to his family is important to Mr. Atkinson's sense of well-being* * * *. It is also important to note that Mr. Atkinson has had a history of alcoholism (currently in remission) and probably suffers from chronic, low grade depression since childhood due to emotional deprivation within his family of origin.

He recommended that Atkinson receive assistance in finding employment and learning new job skills.

Tom Searson, a rehabilitation psychologist, interviewed Atkinson in 1983. He conducted a series of tests and concluded

---

* The HONORABLE EARL R. LARSON, United States Senior District Judge for the District of Minnesota, sitting by designation.

that Atkinson has a sixth grade level reading ability, with borderline functional literacy.

Searson recommended that Atkinson receive personal hygiene training, "on the job training, utilizing the demonstration or laboratory approach, which can be supplemented by simplified reading material," and "good vocational counseling, looking at a variety of areas, including machine monitoring work, machine processing work, machine tending work, bench assembly work, and (depending upon his medical limitations) light custodial tasks."

James G. Patterson, a psychologist, examined Atkinson in 1986. He found significant evidence of organic brain damage in Atkinson's test results.

A vocational expert, Louise Spires, testified at the hearing that, based on all the medical and psychological evidence and the assumption that Atkinson could perform a limited range of light and sedentary work, she believed he could find work in the national economy as a large and small parts assembler. Spires did not disagree with the fact that Atkinson needed rehabilitation, nor did she testify that he could perform such work without the recommended assistance.

After the administrative hearing, the ALJ requested that Atkinson participate in a three-day vocational assessment program at Goodwill Industries, Inc. Hugh Irwin, on behalf of Goodwill Industries, Inc., reported that Atkinson was referred for vocational evaluation services and spent three days undergoing an assessment of his basic work skills and his potential for competitive employment. Irwin stated that Atkinson had a below-average skill level in parts assembly with a marginal training potential, an entry-level skill level in placing clothing on hangers with some training potential, and an entry-level skill level in custodial work with some training potential. He further noted that Atkinson would have difficulty performing jobs requiring fine motor skills, as in assembly work. Irwin recommended that "the most suitable plan for the client would be to continue adjusting to limitations and possibly seek assistance through Nebraska Rehabilitation Services * * *."

After considering the evidence of Atkinson's impairments and the vocational expert's testimony, the ALJ denied Atkinson's claim for disability insurance benefits because he found that Atkinson had the residual functional capacity to perform some light and sedentary work, such as large and small parts assembly. Although we do not disagree with the ALJ's ultimate conclusion that Atkinson may be physically able to tolerate such work, we believe the ALJ erred in failing to recognize that Atkinson does not presently have the physical dexterity, the mental ability or the vocational qualifications to do so.

## DISCUSSION

Persons are considered "disabled" under the Social Security Act if they have an
> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months; * * *.

42 U.S.C. § 423(d)(1)(A) (1988).

The physical and mental impairments must be of such severity that these persons are not only unable to do their previous work, but cannot, considering their age, education and work experience, engage in any kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Once a claimant shows his or her inability to perform past relevant work due to the impairments, the burden shifts to the Secretary to prove the claimant can perform some other kind of substantial gainful activity. 20 C.F.R. §§ 404.1520(f) and 416.920(f); *McGhee v. Harris*, 683 F.2d 256, 258 (8th Cir.1982).

To determine whether a claimant can perform other work, the Secretary determines his or her residual functional capacity, or what that individual can still do despite the physical or mental limitations. 20 C.F.R. § 404.1545. The ALJ will determine whether a claimant can perform medium, light or sedentary work by examining medical reports, the claimant's testimony, and

other testimony at the administrative hearing. 20 C.F.R. § 404.1546. After making this determination, the ALJ will consider whether work exists in the national economy, i.e., whether there are a significant number of jobs having requirements which the claimant is able to meet with the physical and mental abilities and vocational qualifications. 20 C.F.R. § 404.1566.

The ALJ found that Atkinson's impairments were severe enough to preclude him from performing his past work but not enough to preclude him from performing some type of assembly work. Yet, the ALJ did not consider any evidence of Atkinson's need for rehabilitation in reaching this conclusion.

First, the unrebutted finding in the Goodwill report indicates Atkinson does not have the requisite finger dexterity needed to perform assembly work. The job of small parts assembler involves the use of one's hands, tweezers or tongs to bolt, screw, clip, cement or fasten parts together. Dictionary of Occupational Titles § 706.684–038. This job naturally calls for a significant amount of finger dexterity. The Goodwill Industries evaluation, however, clearly indicated that Atkinson does not have this skill. Irwin rated Atkinson's skill average in assembling as below average, with poor work consistency. He reported:

> Based on Glen's observed physical capacities, it would appear that he would have difficulty performing jobs requiring fine motor skills, as in assembly work.

While Atkinson may be able to tolerate a full day of work as an assembler, he is apparently physically unable at the present time to perform this task at an acceptable rate of speed or consistency.

Second, the report of Dr. Fine indicates that Atkinson's emotional battles with alcoholism and depression may retard his ability to find and to retain a job. According to Dr. Fine, rehabilitative services would assist Atkinson in regaining self-confidence and self-control. The obvious inference from this report is that, with such assistance, Atkinson would be able to become a productive member of society.

Finally, both Searson and Townsend appear to concur in the opinion that Atkinson can perform substantial gainful activity if he is given the opportunity to receive vocational counseling, personal hygiene training and on-the-job training. All of this evidence indicates that, while Atkinson may be able to engage in assembly work in the future, he is unable to do this work at the present time and should, therefore, receive disability insurance benefits.

In *Jeffcoat v. Bowen*, 840 F.2d 592 (8th Cir.1988), this Court awarded disability benefits to a claimant with a hearing loss and a learning disability. The award was based on the testimony from a clinical psychiatrist who believed that the only way the claimant could find work in the national economy was through participation in a three- to four-year special technical vocational program. Without the requisite training, the claimant was unable to engage in any substantial gainful work and, as a result, this Court found the claimant disabled. *Id.*, 840 F.2d at 595.

We feel similarly constrained to find Atkinson disabled until such time as he receives the vocational rehabilitation necessary to train him for a position in small or large parts assembly or another suitable occupation or until such time as Atkinson refuses to participate in an available training program. Of course, the Secretary may decrease or suspend disability benefits if Atkinson refuses to accept vocational rehabilitation services without a good reason. *See* 20 C.F.R. § 404.422 (deduction made each month in which beneficiary refuses to accept rehabilitation services available under a state plan approved under the Vocational Rehabilitation Act); 20 C.F.R. § 404.1596(b)(2)(iii) (suspension of benefits when beneficiary refuses to accept vocational rehabilitation services without good reason); 20 C.F.R. § 416.212 (refusal of rehabilitation services renders individual ineligible for benefits); 20 C.F.R. § 416.1715 (examples of good cause for refusing rehabilitation).

By no means do we hold that Atkinson is disabled for life. Under 20 C.F.R. §§ 404.-316 and 416.988, an individual's disability

benefits continue as long as his or her disability exists. If a change in circumstances occurs, such as a medical improvement, and the individual's disability no longer prevents him or her from engaging in substantial gainful activity, then the Secretary may terminate the benefits. 20 C.F. R. § 404.1594; 20 C.F.R. § 416.994 (explanation of how Secretary determines whether disability continues or ends).

In *Van Horn v. Heckler*, 717 F.2d 1196 (8th Cir.1983), this Court held that the question of disability is not an "all-or-nothing proposition." In *Van Horn*, we divided the benefit claim period considered by the ALJ and awarded disability benefits for a two-year period because all of the medical and psychiatric reports submitted indicated that the claimant suffered from schizophrenia and was unable to handle any work outside of a structured environment during that time. *Id.*, 717 F.2d at 1200. Thus, the proper inference drawn from these facts was that the claimant was disabled for a closed period of time.

We believe a similar inference is appropriate in this case. Atkinson alleges an inability to engage in any substantial gainful activity since December 19, 1984, due to borderline intellectual functioning, organic brain damage, alcoholism in remission, total right hip arthroplasty, degenerative arthritis, chronic low back pain, and degenerative disc disease. All of the medical reports support a finding that Atkinson was unable to perform any activity other than light or sedentary work since that time. This medical evidence, coupled with the reports of Atkinson's need for rehabilitation and vocational training, leads to an inference that Atkinson has been unable to perform even unskilled light or sedentary work, such as small and large parts assembly, since the end of 1984.

Accordingly, we reverse the finding of the district court and the ALJ and award Atkinson disability benefits, to begin on December 19, 1984, and to continue until Atkinson has finished rehabilitation or a job training program and the Secretary determines that he is actually able to perform one of the jobs suggested by the vocational expert or any other suitable job available in significant numbers in the national economy. These benefits may be terminated by the Secretary if Atkinson refuses rehabilitation services or fails to make a good faith attempt to seek rehabilitation.