**Kathleen F. EASTER, Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Appellee.**

No. 88–1750.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 20, 1988.

Decided Feb. 14, 1989.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Richard L. Richards, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before ARNOLD and MAGILL, Circuit Judges, and ROSS, Senior Circuit Judge.

ARNOLD, Circuit Judge.

Kathleen F. Easter appeals from the judgment of the District Court affirming the Secretary's denial of her claim for social security disability benefits. Because the residual-functional-capacity finding of the Administrative Law Judge is not supported by substantial evidence, and the record contains substantial evidence of the claimant's disability, we reverse and remand the case to the District Court with instructions to remand to the Secretary for an award of benefits.

I.

Mrs. Easter, who was born in 1940, held various jobs as a transcriptionist, stenographer, secretary, and clerk from 1955 through 1982, with time off from 1967 until 1973 to raise her three children. She left her most recent job as a transcriber-typist for the Des Moines Police Department on December 5, 1982 for health reasons, and seeks disability insurance from that date. She testified that her inability to sit still without muscle spasms, her "brain tingling numbness," staggering, and difficulty concentrating made work intolerable. Tr. 236.

Mrs. Easter first applied for disability benefits on August 19, 1983. They were administratively denied on May 31, 1984. She appealed that decision and was granted a remand by the District Court on September 30, 1985. The Court found that there was no substantial evidence to support the decision that Mrs. Easter could return to her former work, and that the ALJ had not given "adequate consideration to the psychological and memory problems of this plaintiff that are amply supported by medical evidence." No. 84–591–A, slip op. at 2 (S.D.Iowa, Sept. 30, 1985).

On June 11, 1986, the ALJ again denied Mrs. Easter's claim, this time recognizing that she is unable to perform her past relevant work but concluding that she retains the residual functional capacity to work as a switchboard operator, desk clerk,

dispatcher, or file clerk. The District Court upheld that decision on March 15, 1988, and Mrs. Easter brought this appeal.

## II.

Mrs. Easter asserts multiple ailments, several of which are mentioned in the medical reports of record. These include hypertension, dizziness, loss of balance and staggering, blacking out, difficulty concentrating, blurring and double vision, severe headaches, seizures, numbness and a tingling sensation in her head and extremities, trouble lifting and gripping objects, carpal tunnel syndrome (pressure on the median nerve in the hand, causing sensations of pain, tingling, burning, and numbness, as well as swelling and muscle atrophy), fibromyalgia (muscular pain and spasms), osteoarthritis, osteoporosis, morbid obesity that persists despite a previous gastroplasty, dumping syndrome (dizziness, sweating, weakness, headache, and other pain after eating), respiratory problems (after removal of her left lung in 1968), and general loss of stamina and muscle coordination. The reports indicate that Mrs. Easter was also convinced in 1983 that she had multiple sclerosis, although two specialists were unable to find evidence of neurological disease.

While the objective medical data supporting this list of physical ailments are of varying degrees of certainty and specificity, the ALJ had before him uncontradicted diagnoses by Mrs. Easter's treating and consulting physicians that she suffers from a mental condition known as somatoform or conversion disorder. This mental disturbance causes her to believe that her physical ailments are more serious than the clinical data would suggest. As described in the *Diagnostic and Statistical Manual of Mental Disorders* (Third Edition) at pages 244 and 247, conversion disorder is not under a patient's voluntary control. In other words, Mrs. Easter experiences her physical problems as worse than they may in fact be, and is unable to control this response. Additionally, Mrs. Easter's medical records indicate other mental disturbances, including depression with suicidal ideation, chronic insomnia and extreme fatigue, a low frustration tolerance level, and possibly a deficiency of logical memory functions.

Mrs. Easter has been under the care of Richard Preston, M.D., a specialist in psychiatry and neurology, since 1979.[1] In a letter dated April 28, 1986, Dr. Preston identified Mrs. Easter's somatoform disorder and a longstanding atypical personality disorder. He concluded: "I see her conditions, both mental and physical, as being chronic in nature and requiring long-term management both psychiatrically and medically.... I do not see this lady as being employable either now or at any time in the future." Tr. 351. He noted that Mrs. Easter was taking "several psychotropic medications including Sinequan or Adapin, Tranxene, Desyrel and Noludar." *Id.*

On February 19, 1986, consulting doctor Julian Melhado, D.O., Ph.D., conducted a psychological evaluation of Mrs. Easter and diagnosed her as having "300.11 Conversion Disorder. 316.00 Psychological Factors Affecting Physical Condition. [and] 301.50 Histrionic Disorder." Tr. 325. He felt that she would be capable of working "[w]ith the proper support," *id.*, and went on to identify her treatment needs as first, "intensive psychotherapy which, unfortunately, may be somewhat difficult to institute because these patients are often resistant to the idea that they have any psychological etiology contributory to their condition," and second, "treatment for the chronic pain disorder (Psychological Factors Affecting Physical Conditions) which would require the services of a multidisciplinary high quality pain clinic." Tr. 326. He expressed his view that the chronic pain treatment would be even more difficult than the psychotherapy, and concluded that "[h]er prognosis with treatment is moderate." *Id.*

---

1. Dr. Preston has also treated each of Mrs. Easter's three children and her husband for emotional problems at various times since 1978.

### III.

Although the ALJ's opinion discusses many of Mrs. Easter's complaints, and cites her somatoform disorder, it does not adequately consider the effects of that mental condition. The ALJ finds that "[w]hile the claimant has allegations of pain in multiple areas, those allegations are inconsistent with the clinical and nonmedical evidence of record, except as related to her somatoform disorder." Tr. 203. In concluding that Mrs. Easter is not disabled, the ALJ fails to appreciate that the somatoform disorder itself is disabling in Mrs. Easter's case. Any shortcomings in the objective medical data that support her alleged physical ailments are irrelevant since her primary disorder, as clinically diagnosed, causes her to exaggerate her physical problems in her mind beyond what the medical data indicate.

The ALJ dismisses Dr. Preston's assessment of his long-term patient's disabling condition because it is based upon Mrs. Easter's subjective impressions of her health, unsupported by objective medical evidence that could corroborate her complaints. This misses the point of her serious mental problem. There is no suggestion in the record that Mrs. Easter is malingering or pretending to experience her many ailments. She has consistently sought medical treatment from her family physician and a number of specialists, and takes a variety of prescription medications, including Inderal for hypertension, Midrin for headaches, Tolectin for arthritis, and Darvocet and Fiorinal 3 for muscle spasms. Tr. 344. The ALJ acknowledges "that a preponderance of the evidence shows that the claimant does experience some aches, pain and balance problems, and that certain activities aggravate these conditions." Tr. 201. He also acknowledges that "[t]here has been some indication that she may convert psychological distress into somatic complaints." *Id.* Nevertheless, the ALJ chooses to form his own conclusions about the severity of Mrs. Easter's problems, dis-

regarding Dr. Preston's opinion, and focusing on Mrs. Easter's participation in modest activities such as watching television, receiving visitors, and caring for pets,[2] and his observations that she did not manifest significant pain during her hearings.

As the ALJ himself notes, "the observations of an Administrative Law Judge of the claimant at a hearing cannot form the [sole] basis for rejection of the allegations of pain ..." *Id.* See, *e.g., Lanning v. Heckler,* 777 F.2d 1316, 1317 (8th Cir.1985). Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See *Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)). Judge Stuart, in the first District Court opinion in Mrs. Easter's case, reminded the Secretary of our statement in *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980), that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance.... It is unrealistic to think that they would hire anyone with the impairments of this plaintiff." No. 84–591–A, slip op. at 2 (S.D.Iowa, Sept. 30, 1985).

The ALJ cites the opinion of Dr. Melhado, who has conducted a battery of tests on Mrs. Easter, over that of Dr. Preston. Generally, a consulting physician's opinions are not given greater weight than those of a physician who has treated the claimant for several years, see *Hancock v. Secretary of HEW,* 603 F.2d 739, 740 (8th Cir. 1979), and in this case Dr. Melhado apparently evaluated Mrs. Easter without benefit of her medical records and history. Regardless of those issues, the ALJ erred by taking out of context Dr. Melhado's statements about Mrs. Easter's employment potential. The ALJ failed to mention Dr.

---

**2.** We note that she testified to her inability to sit for long periods watching television or to perform such chores as loading the dishwasher, and that her only social contacts were her mother and one other friend. Tr. 320.

Melhado's views concerning the types of treatment (intensive psychotherapy and the services of a multidisciplinary pain clinic) that would be a prerequisite to Mrs. Easter's return to the working world. *Cf. Jeffcoat v. Bowen*, 840 F.2d 592, 595 (8th Cir. 1988). The evaluations of Drs. Melhado and Preston are fully consistent—both recognize Mrs. Easter's significant mental disturbance and consequent pain, and neither suggests that she is capable of working in her present condition. At best, Dr. Melhado believes her prospects to be moderate after receiving extensive treatment. Thus, the ALJ has substituted his judgment about Mrs. Easter's condition for the judgments of both Dr. Preston and Dr. Melhado.

The ALJ rejects the conclusions drawn not only by her doctors but also by the vocational expert with respect to Mrs. Easter's asserted problems. The opinion notes the vocational expert's view "that the claimant would be incapable of any work existing in significant numbers in the national economy if the limited use of her hands and fingers, poor stooping and bending ability, and the need to alternate sitting and standing to which she had testified were true." Tr. 201. The ALJ then discounts this conclusion, though, because "none of these allegations finds support in the medical evidence of record." *Id.* Once again, the ALJ gives insufficient weight to Mrs. Easter's somatoform disorder, and focuses unduly on the objective physical data. Without expressly finding Mrs. Easter's testimony not credible, the ALJ is not free to reject her subjective experiences in this way, particularly since she has a diagnosed mental disorder that causes a distorted perception of her physical ailments. To do so is directly contrary to the spirit of *Polaski v. Heckler*, 739 F.2d 1320 (order), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*,

—— U.S. ——, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

### IV.

Having reviewed the entire record, including Mrs. Easter's testimony, the uncontradicted opinions of Drs. Preston and Melhado, and the assessment of the vocational expert, we hold that there is not substantial evidence to support the ALJ's findings. While some of the evidence about her physical problems conflicts, there is no dispute concerning her somatoform disorder and its disabling effect. In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464–65, 95 L.Ed. 456 (1951); *Piercy v. Bowen*, 835 F.2d 190, 191 (8th Cir.1987).

The judgment is reversed, and the cause remanded to the District Court with directions to remand it to the Secretary for an award of benefits in the appropriate amount. We note that this claimant's condition may be remediable with treatment,[3] and remind the Secretary of his authority to terminate her benefits if she fails to pursue prescribed treatment that, to a reasonable degree of medical certainty, would restore her ability to work. 20 C.F.R. 404.-1530.

It is so ordered.

---

3. Besides the psychotherapy and pain clinic services recommended by Dr. Melhado, surgery may correct Mrs. Easter's carpal tunnel syndrome (a disorder of the principal nerve of the hand) and restore the use of her hands, according to a March 28, 1984 letter by Dr. Preston. Tr. 180.