# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3669

_____

| | |
|---|---|
| Jim Burnside, | * |
| | * |
| Appellant, | * |
| | * |
| | *  Appeal from the United States |
| v. | *  District Court for the |
| | *  Eastern District of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * |
| Social Security Administration, | * |
| | * |
| Appellee. | * |

_____

Submitted:  April 13, 2000

Filed:  August 21, 2000

_____

Before WOLLMAN, Chief Judge, BEAM, Circuit Judge, and FRANK,[1] District
Judge.

_____

WOLLMAN, Chief Judge.

Jim E. Burnside appeals from the district court's judgment affirming the denial
of his application for disability insurance benefits pursuant to Title II of the Social
Security Act, 42 U.S.C. §§ 416(i) & 423, and for supplemental security income
pursuant to Title XVI, 42 U.S.C. § 1381a.   We reverse and remand.

_____

[1]The Honorable Donovan W. Frank, United States District Judge for the District
of Minnesota, sitting by designation.

# I.

Burnside was born on July 3, 1948, completed the ninth grade, and has earned a general equivalency diploma. His past relevant work experience includes that of a laborer in a rice mill and machine operator. In the fall of 1994, Burnside suffered severe chest pain and heart failure. Several cardiac surgeries were performed on Burnside in late 1994 and early 1995. Subsequent to surgeries in January and March of 1995, his physicians ordered conservative treatment, prescribing medication and instructing Burnside to go on a low-fat, low-cholesterol, low-salt diet and to walk short distances daily, slowly increasing the distance. Burnside was also limited from heavy lifting and driving for six weeks after the March surgery.

In June of 1995, cardiologist Dr. Evan Cohen noted that Burnside was doing well, but Burnside complained of shortness of breath and a tightening of the chest to cardiologist Dr. Michael Camp, who accordingly recommended pulmonary evaluation. Burnside performed normally on a stress test in June of 1995 administered by Dr. Camp, who recorded that Burnside appeared to suffer from mild dyspnea[2] during the recovery phase. Although Burnside consistently complained of shortness of breath, Dr. Robert Ford cleared him to return to work in August of 1995, telling Burnside to pace himself and to leave the heavy lifting to others. In September of 1995, however, Burnside was hospitalized because of breathing difficulties and chest pain and was treated with medication and inhalers. That month, Dr. Jeffrey Cohen diagnosed Burnside as suffering from moderate chronic obstructive pulmonary disease (COPD),

---

[2]Dyspnea is "[s]hortness of breath, a subjective difficulty or distress in breathing, usually associated with disease of the heart or lungs; occurs normally during intense physical exertion or at high altitude." Stedman's Medical Dictionary 535 (26th ed. 1995).

bronchospastic overlay (bronchospasms), and a paralyzed hemi-diaphragm.[3]   Dr. Jeffrey Cohen subsequently recommended Burnside's removal from his current work environment because of the level of dust.  In October of 1995, Dr. Ford reported Burnside's hospitalization in the progress notes of a follow-up visit, prescribed inhalers, strongly encouraged Burnside to quit smoking, and noted the level of dust at Burnside's workplace, but the physician did not instruct him not to return to work or otherwise restrict his activities.

Burnside protectively filed his application for benefits on October 17, 1995, alleging an onset disability date of December 15, 1994.  Burnside asserts that he is unable to work because of heart disease, lung disease, and the paralyzed diaphragm. The Social Security Administration denied Burnside's application initially and again on reconsideration.   Burnside then requested and received a hearing before an administrative law judge (ALJ).  The ALJ evaluated Burnside's claim according to the five-step sequential analysis prescribed by the social security regulations.  See 20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing analysis).  At the first three steps of the analysis, the ALJ found that Burnside had not engaged in substantial gainful activity since his onset date, that he suffered from coronary artery disease and COPD, and that he had severe impairments that did not meet or equal a listed impairment.  At the fourth step, the ALJ determined that Burnside's exertional limitations prevent him from returning to his past relevant work.  Shifting the burden of proof to the Commissioner at the fifth step--the determination of whether Burnside could perform a significant number of jobs within the national economy--the ALJ applied Rule 202.20 of the Medical-Vocational

---

[3]Dr. Evan Cohen's notes from Burnside's follow-up office visit in December of 1995 indicate that the paralyzed diaphragm condition "is probably related to . . . his coronary operation" and suggest that the condition usually clears up within a year of its genesis.  Notations in the medical evidence, however, listed Burnside's diaphragm as paralyzed yet in May of 1996.

Guidelines, <u>see</u> 20 C.F.R. Part 404, Subpt. P, App. 2, and concluded that Burnside was not disabled.

The Appeals Council denied Burnside's request for further review. Accordingly, the ALJ's judgment became the final decision of the Commissioner of the Social Security Administration. Burnside then sought review in the district court, which granted summary judgment in favor of the Commissioner. Burnside now appeals, arguing that the ALJ improperly discounted his subjective complaints and that, in light of his nonexertional impairments, the ALJ erred in failing to call a vocational expert to evaluate his ability to perform a significant number of jobs in the national economy.

## II.

Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. <u>See</u> <u>Prosch v. Apfel</u>, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. <u>See</u> <u>id.</u> In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. <u>See</u> <u>Craig v. Apfel</u>, 212 F.3d 433, 436 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, <u>see</u> <u>id.</u>, or because we would have decided the case differently. <u>See</u> <u>Browning v. Sullivan</u>, 958 F.2d 817, 822 (8th Cir. 1992).

## A.

Burnside contends that the ALJ erred in several ways in determining Burnside's residual functional capacity. He argues that the ALJ improperly concluded that his

failure to quit smoking was a reason to deny benefits and that he suffered from no nonexertional impairments that limit his residual functional capacity. In light of our remand for further proceedings, we do not reach Burnside's third argument, that the ALJ erred in determining that he could perform light work with the exertional impairments that he possesses.

**1.**

The ALJ found that Burnside continues to smoke a pack of cigarettes per day despite his doctors' recommendation that he quit, and pointed out that a failure to follow a prescribed course of medical treatment without good reason may be reason to deny benefits. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). It is not clear from the record, however, whether the ALJ relied upon Burnside's failure to stop smoking as a basis for the decision to deny benefits. We note that before a claimant is denied benefits because of a failure to follow a prescribed course of treatment an inquiry must be conducted into the circumstances surrounding the failure and a determination must be made on the basis of evidence in the record whether quitting will restore Burnside's ability to work or sufficiently improve his condition. See 20 C.F.R. §§ 404.530(a), 416.930(a); Roth v. Shalala, 45 F.3d 279, 282-83 (8th Cir. 1995); Kirby v. Sullivan, 923 F.2d 1323, 1328 n.2 (8th Cir. 1991).

**2.**

The ALJ also found that Burnside did not suffer from nonexertional impairments that limit his residual functional capacity to perform light work. Burnside contends that substantial evidence shows that he suffers from shortness of breath and chest pain and must work in a clean environment. Applying the factors outlined in Polaski, the ALJ noted inconsistencies in the record and found Burnside's testimony regarding these ailments to be exaggerated and inconsistent. Thus, he discounted Burnside's complaints, holding that Burnside suffers from no nonexertional impairments.

-5-

Nonexertional limitations are those that affect a claimant's "ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing, or pulling. . . ." 20 C.F.R. §§ 404.1569a(a), 416.969a(a). In analyzing a claimant's subjective complaints, such as pain, an ALJ must examine: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. See Polaski, 739 F.2d at 1322. "Other relevant factors include the claimant's relevant work history and the absence of objective medical evidence to support the complaints." Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). As we have stated many times, "there is no doubt that the claimant is experiencing pain; the real issue is how severe that pain is." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (quoting Thomas v. Sullivan, 928 F.2d 1255, 1259 (8th Cir. 1991)).

We conclude that the ALJ erroneously discounted Burnside's complaints of shortness of breath and improperly concluded that Burnside had no nonexertional limitation, such as a requirement that he work in a clean environment.

The medical evidence is equivocal regarding Burnside's claim of nonexertional impairments that prevent him from performing light work within certain environments, but it is evident that he has some nonexertional impairments. For example, Burnside's diagnosis on a treadmill test in June of 1995 showed only minor anomalies, and he stated that he felt no chest pain or pressure at that time. There are notations by medical personnel on the test results, however, reporting that Burnside felt dizzy, asked to stop, and became short of breath. Burnside stopped a subsequent treadmill test in May of 1996 after less than five minutes' time because of shortness of breath.[4] Although none

_____

[4]The test was classified as "non-diagnostic" because Burnside's oxygen saturation did not drop below 100% during that time period. The test was normal up to a heart rate of 121.

of Burnside's doctors restricted him from working after the initial period of recovery from surgery, he returned many times with complaints of shortness of breath, for which the doctors ordered further testing, although the treatment they ultimately prescribed was conservative.

Other medical evidence further supports the proposition that Burnside suffers from nonexertional impairments. Burnside points to the report by Dr. Jeffrey Cohen that states that Burnside should be removed "from current work environment as this is too dusty," indicating that he must work in a clean environment, which may constitute a nonexertional impairment under the regulations. See 20 C.F.R. § 404.1569a(c)(1)(v). When Burnside met with Dr. Ford in October of 1995, the physician noted that Burnside appeared chronically ill and much older than his stated age, and that although heart sounds were normal, examination revealed decreased breath sounds throughout. Dr. Ford also noted the dusty condition of Burnside's workplace.

Burnside's testimony also supports the conclusion that he is limited by nonexertional impairments. Burnside testified that he experiences chest pain and shortness of breath with any exertion and that once a month he experiences pain of such severity that he must lie down for approximately a week. Burnside's work record is apparently solid and one of Dr. Ford's progress reports indicate that Burnside actively sought clearance to return to work. A consistent work record may support the credibility of a claimant's subjective complaints. See Singh v. Apfel, 217 F.3d 586, ___ (8th Cir. 2000). Burnside's daily activities are not inconsistent with the assertion that his nonexertional impairments are disabling. Burnside testified that using an inhaler eases his breathing, but easier breathing does not mandate a finding that Burnside is capable of returning to work on "a daily basis in the 'sometimes competitive and stressful' environment of the working world." Warburton v. Apfel, 188 F.3d 1047, 1051 (8th Cir. 1999) (quoting Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989)). Burnside testified that when he mows his lawn, which is "four half lots," he does only part of it per day; that he tinkers in his shop on an old car, but that this

activity wears him out for several days; and that he likes woodworking, feeds and checks on his children's pet ducks, cooks occasionally, drives around town, grocery shops, and runs errands. A claimant need not be bedridden to qualify for disability benefits. See Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998) ("[A] person's ability to engage in personal activities such as cooking, cleaning, and hobbies does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity.").

We have reversed and remanded where an ALJ failed to consider environmental restrictions and the full effect of mild COPD when he determined that a claimant was not restricted from light work. See Forsythe v. Sullivan, 926 F.2d 774, 776 (8th Cir. 1991). Here, we note that Burnside suffers from moderate COPD, a higher level of pulmonary impairment than that suffered by the claimant in Forsythe. In this case, as in that one, substantial evidence in the record indicates that Burnside is limited in some fashion by nonexertional impairments and that he should be restricted from dusty work environments. Whether these nonexertional limitations preclude Burnside from performing the full range of light work is a question for the ALJ and a vocational expert. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The judgment is reversed, and the case is remanded to the district court with instructions to remand to the Commissioner for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.