DECISION
Before the Court is an appeal from a decision of the Rhode Island Department of Human Services (DHS), denying the application of the plaintiff, Miguel Rodriguez (plaintiff), for Medical Assistance (MA). The plaintiff seeks either a reversal of the DHS decision, or alternatively, remand of the case to the DHS hearing officer. Jurisdiction is pursuant to G.L. 1956 § 42-35-15.
 Facts/Travel
On August 16, 1999, the plaintiff applied for Medical Assistance. He submitted the relevant medical forms (MA-63 and AP-70), hospital and clinical records, as evidence of his disability. At the plaintiff's administrative hearing, he testified that he is being treated for Hepatitis C and that his real problem has been severe back and chest pains. He has not been treated for his severe back and chest pains because his doctor, stopped all other treatment upon diagnosing the plaintiff with Hepatitis C. (Tr. at 9.)
The plaintiff also submitted a medical examination report from Dr. Wolfson on February 2, 2000, stating that the plaintiff suffers from the following symptoms: back and neck pain, numbness in his arms and hands. Dr. Wolfson classified the plaintiff's level of pain as severe. Moreover, Dr. Wolfson found that the plaintiff could not sustain competitive employment on a full time basis. According to Dr. Wolfson, the plaintiff's condition changed from moderate to severe between September 15, 1999 and February 2, 2000, the date of his next examination.
Additional evidence before the agency relating to the plaintiff's disability was his May 25, 1999 radiology report. This report indicates that the plaintiff has degenerative changes at the intervertebral level with no radiographic evidence of acute fracture or dislocation. Furthermore, the report finds that the plaintiff has moderate narrowing of the C5-6 interval disc space with a severe subchondral sclerosis, moderate anterior osteophytes and small posterior osteophytes. The report concludes that the vertebral bodies and posterior elements otherwise demonstrate normal alignment and disc space caliber without fracture. (Exh. 17.)
The plaintiff also submitted an AP-70 form. On this form, the plaintiff states that he can do all household activities, including cooking, doing dishes and laundry, and vacuuming. The plaintiff also stated that he could walk for three hours per day. Additionally, the plaintiff's MA-63 form states that he can sit and stand for eight hours with occasional breaks.
At the plaintiff's administrative hearing, the plaintiff testified that he could walk only a little, maybe twenty minutes per day, without having to sit. (Tr. at 10.) Furthermore, the plaintiff testified that he could only sit for five minutes at a time and has to stand for five minutes. Id.
The Medical Assistance Review Team (MART) of the DHS reviewed the evidence submitted by the plaintiff and concluded that the plaintiff was not totally or permanently disabled. The MART reached this conclusion because the plaintiff was potentially capable of sedentary work. (Tr. at 4.) The MART issued a notice of denial of benefits to the plaintiff. The plaintiff subsequently timely filed for an administrative hearing which was held on May 10, 2000.
On June 8, 2000, the DHS sustained the decision of the Medical Assistance Review Team, finding that the plaintiff was not totally or permanently disabled. The plaintiff timely filed an appeal of the Hearing Officer's decision to this Court.
 Standard of Review
The scope of the Superior Court's review of administrative decisions is confined by § 42-35-15(g) which provides:
 "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if the substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) in violation of constitutional or statutory provisions;
 (2) in excess of the statutory authority of the agency;
 (3) made upon unlawful procedure;
 (4) affected by other errors or law;
 (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
A Superior Court judge does not weigh the evidence on review upon which the findings of fact are based but merely reviews the record in order to determine if there is legally competent evidence to support the administrative decision. Bunch v. Board of Review, Rhode Island Dep. of Employment and Training, 690 A.2d 335, 337 (R.I. 1997); St. Pius X Parish Corp. v. Murray, 557 A.2d 1214, 1218 (R.I. 1989). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the agency's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). `Substantial evidence' is that which a reasonable mind might accept to support a conclusion. Id. at 897 (quoting Caswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). The Court is precluded from "substituting its judgment for that of the agency in regard to credibility of witnesses or to the weight of the evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988). This court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resource Management Council, 434 A.2d 266, 272 (R.I. 1981).
 Department of Human Services
The Rhode Island Department of Human Services is an agency within the Executive Branch of state government. G.L. 1956 42-12-1 et seq. Pursuant to its statutory mandate, DHS is responsible for the management, supervision and control of various social service programs. Specifically, DHS is responsible for the management of state and federally funded public assistance programs. G.L. 1956 § 42-12-4.
General Laws 1956 § 40-8-1(c) provides in pertinent part:
 "[It is] declared to be the policy of the state to provide medical assistance for those persons in this state who possess the characteristics of persons receiving public assistance under the provision of 40-5.1-9 or 40-6-27, and who do not have the income and resources to provide it for themselves or who can do it only at great financial sacrifice. Provided further that medical assistance must . . . qualify for federal financial participation pursuant to the provisions of Title XIX of the federal Social Security Act, 42 U.S.C. § 1396 et. seq., as such provisions apply to medically needy only applicants and recipients."
The DHS is responsible for administering the Medical Assistance Program within the standards of eligibility, as enumerated in G.L. 1956 §40-8-3. For all eligible individuals, DHS must pay benefits pursuant to regulations which it must develop and have approved by the federal government. To comport with the federal requirements in order to receive federal funding, the DHS must develop regulations and have them approved by the federal government. See, G.L. 1956 40-8-5.
 Standard Used To Determine Disability
Because the Medical Assistance Program is a product of the federal Social Security Act and is administered by the federal government, see42 U.S.C. § 1396 et. seq., the DHS is obligated to adopt the definitions and guidelines established by the federal government. The DHS regulations state that an individual is eligible for medical assistance if: "s/he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted, or can be expected to last for a continuous period of not less than twelve months." DHS Regulations Section 0352; 42 U.S.C. § 1382(c)(a)(3). The federal guidelines set forth a five step sequential evaluation to determine whether an individual is disabled:
 1. Is the claimant engaged in substantial activity?
 2. If not, is the impairment severe?
 3. If severe, does it meet or equal an impairment list in the Supplemental Security Income (SSI) regulations?
 4. If it does not meet or equal SSI regulations, does the impairment prevent the claimant from doing past relevant work?
 5. Considering age, education, work experience and residual functional capacity, does the impairment(s) prevent the claimant from doing other work in the national economy?
See 20 C.F.R. § 416.920; see also Brown v. Yuckert, 482 U.S. 137, 141-43 (1987). In applying this five step evaluation, once the Hearing Officer reaches a negative answer to any of the questions, other than, to step three, a determination of not disabled must be made. Pratt v. Rhode Island Dept. of Human Services, CA. No. 96-6490, February 10, 1998, Savage, J. (citing McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986)).
 Application of the Five Step Process
The plaintiff contends that the DHS failed to apply the proper standard as set forth by federal law, rendering its decision arbitrary and capricious in violation of the due process clause of the federal and Rhode Island Constitutions. While the record indicates that the Hearing Officer did not explicitly state that he was applying the five-step process, the record reveals that the Hearing Officer did in fact apply the five step sequential evaluation required by federal law. In applying the legal standard, "the Hearing Officer is not required to cite particular regulations or cases nor is [he] required to use particular formulations." Jamison v. Bowen, 814 F.2d 585, 588-89 (11th Cir. 1987).
The Hearing Officer's decision demonstrates that he concluded that the plaintiff was not disabled at Step 5 of the analysis. Step 5 requires the Hearing Officer to consider age, education, work experience and residual capacity, to determine if the impairment prevents the claimant from doing other work in the national economy. 20 C.F.R. § 416.920. The Hearing Officer's decision reveals that he looked at the relevant medical evidence submitted by the plaintiff and came to the conclusion that the plaintiff's impairment would not preclude him from performing sedentary work. The decision indicates that the Hearing Officer considered the May 29, 1999 radiology report showing some hardening of tissue in the plaintiff's spine, but otherwise demonstrating normal mineralization, without fracture and unremarkable tissue. (Exh. 17.) Additionally, the Hearing Officer noted that the plaintiff said that he could do all household activities. (Exh. 6.) Moreover, the plaintiff asserted that he could walk three hours per day on his AP-70 form. Id. However, the plaintiff testified that he could walk only a little, twenty minutes, without sitting. (Tr. at 10.) In evaluating the plaintiff's condition, the Hearing Officer was entitled to rely on his impression of the credibility of the plaintiff in reaching his decision. See Warda v. Apfel, No. 99-CV-00554, 2000 U.S. Dist. LEXIS 11489 (credibility determinations will not be upset on appeal if they find some support in the record.) Finally, the Hearing Officer credited the February 2, 2000 physician report indicating that the plaintiff is capable of sedentary work. (Exh. 16.) Given that the Hearing Officer found the plaintiff capable of sedentary work, it is evident that the Hearing Officer applied the five-step process, and concluded at Step 5, that that the plaintiff is capable of other work in the national economy. 20 C.F.R. § 416.920.
The plaintiff further argues, in reliance upon Flynn v. RI Department of Human Services, CA 93-2806, January 26, 1995, Fortunato, J., that the Hearing Officer's decision violates the Administrative Procedures Act because there is no logical connection between the Hearing Officer's conclusion and the underlying facts. The Administrative Procedures Act requires that agency decisions be accompanied by findings of fact and conclusions of law, separately stated. G.L. 1956 § 42-35-12. In Flynn, the Court found that the Hearing Officer's decision failed to "advise the applicant or [the] Court as to what logical connection, if any, were made by the Appeals Officer between the facts in the record and the controlling criteria with respect to eligibility." Flynn v. RI Department of Human Services, CA 93-2806, January 26, 1995, Fortunato, J. Here, the requirements of the APA are met because the Hearing Officer's decision enables the Court and the applicant to know the basis of the agency decision. The Hearing Officer found, based on the medical evidence presented and his evaluation of the plaintiff's credibility, that the plaintiff failed to show that he could not perform any other work in the national economy. The Hearing Officer was faced with contradictory evidence and weighed the evidence to come to the conclusion that the plaintiff did not establish that he could not perform any work in the national economy. Thus, the Hearing Officer applied the proper legal standard in conformity with the requirements of the APA.
 Substantial Evidence
Next, the plaintiff contends that the DHS decision is unsupported by substantial evidence. The plaintiff asserts that the Hearing Officer was required to accept Dr. Wolfson's findings that the plaintiff was incapable of any kind of work. The plaintiff asserts that nothing contradicts Dr. Wolfson's findings that the plaintiff cannot perform any kind of work.
The Hearing Officer was not required to accept Dr. Wolfson's findings. The Code of Federal Regulations provides that the opinion of a treating physician is given controlling weight only if it is "well-supported by medically accepted clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." C.F.R. § 416.927(d)(2). Furthermore, the Hearing Officer could have found that Dr. Wolfson's findings were contradicted by the plaintiff's own assertions and testimony, and by other evidence. The plaintiff asserted on his AP-70 form that he could perform all household activities, and in addition, stated that he could walk only three hours a day. While an ability to perform light household work does not necessarily indicate an ability to perform gainful employment, Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989), this ability, in conjunction with the other evidence before the Hearing Officer, allowed the Hearing Officer to reasonably conclude that the plaintiff was not disabled.
In addition, the plaintiff contradicted his AP-70 form statement when he testified that he could walk only a little, maybe twenty minutes per day, but needs to sit. Consequently, the Hearing Officer "merely balanced conflicting evidence as any fact finder must do, and found that the medical evidence against a finding of disability outweighed the showing that the claimant was disabled." Stunk v. Heckler, 732 F.2d 1357, 1364 (7th Cir. 1984). In addition to the inconsistent testimony of the plaintiff, the Hearing Officer heard testimony from MART indicating that the plaintiff was potentially capable of performing sedentary work. (Tr. at 4.)
The Hearing Officer also noted that although the plaintiff testified that he could only sit for five minutes at a time, while testifying, the plaintiff showed no discernible signs of discomfort and choose to stand only once for about a minute during his testimony. "A hearing officer is permitted to take notice of a claimant's demeanor during an administrative hearing, however the Administrative Law Judge (ALJ) is not free to reject a claimant's credibility on the account of the claimant's failure to sit and squirm during the hearing." Cline v. Sullivan, 939 F.2d 560, 568 (8th Cir. 1991). In this case, it does not appear that the Hearing Officer gave inordinate weight to the plaintiff's apparent lack of discomfort, but noted this fact as another inconsistency concerning the plaintiff's ability to sit and stand. Given the conflicting evidence, this Court cannot reverse the Hearing Officer who observed the plaintiff testify and whose decision that the plaintiff is capable of substantial gainful employment is supported by substantial evidence. Costa, 543 A.2d at 1309 (stating that the Court must not substitute its judgment for that of the agency in regard to the credibility of the witnesses or the weight of the evidence concerning questions of fact.)
 Plaintiff's Ability to Perform Sedentary Work
The plaintiff also contends that the DHS decision is unsupported by substantial evidence because the record shows that the plaintiff is unable to do any kind of work, including sedentary work. Sedentary work is defined in the Social Security Regulations as involving "lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." Although a sedentary job is defined as one involving sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a); Rodriguez v. Secretary of Health and Human Services, 819 F.2d 1 (1st. Cir. 1987).
The evidence before the Hearing Officer demonstrated that the plaintiff could perform sedentary work. The plaintiff testified that he could lift as much as ten pounds if he could feel it. (Tr. at 13.) With regard to the plaintiff's ability to walk, the Hearing Officer was faced with contradictory evidence. (Tr. at 10); (Exh. 6.) Thus, the Hearing Officer had competent evidence to conclude that the plaintiff could perform the occasional walking and standing necessary for sedentary work. Social Security Ruling No. 83-10. Significantly, both MART and the plaintiff's treating physician, Dr. Wolfson, determined that the plaintiff was capable of performing sedentary work. (Exh. at 16.); (Tr. at 4.) While the plaintiff argues that due to the numbness in his hands he cannot perform sedentary work, Dr. Wolfson, his treating physician, aware of the numbness in plaintiff's hands, nevertheless concluded that the plaintiff was capable of sedentary work. (Exh. at 16.) Therefore, the Hearing Officer's finding is supported by substantial evidence and is not clearly erroneous.
 Hearing Officer's Evaluation of Plaintiff's Subjective Complaint of Pain
Finally, the plaintiff argues that the DHS violated federal law by failing to evaluate plaintiff's condition in accordance with the SSI regulations. The plaintiff stresses that uncontroverted medical evidence establishes the existence of an objectively determinable impairment which reasonably could be expected to cause pain. The Code of Federal Regulations provides that the applicant must furnish medical and other evidence that can be used to reach conclusions about a medical impairment. 20 C.F.R. § 416.912(a). The Regulations further provide that evidence is not limited to objective medical evidence but includes statements made by the applicant and by others concerning the impairment and its restriction on daily activities and efforts to work.20 C.F.R. § 416.912(3). Thus, in determining whether the plaintiff satisfied the definition of disability, the Hearing Officer was entitled to rely on the medical evidence and statements of the plaintiff and his physician. The Hearing Officer was required to make a credibility determination in weighing all of the evidence. See Warda v. Apfel, No. 99-CV-00554, 2000 U.S. Dist. LEXIS 11489 (stating that credibility determinations will not be disturbed unless patently wrong.) In finding that the plaintiff did not satisfy the statutory definition of disability, the Hearing Officer's decision was not clearly erroneous.
 Conclusion
After reviewing the entire record, this Court finds that the Hearing Officer's decision was supported by reliable, probative, and substantial evidence on the record and was not arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion. Moreover, substantial rights of the plaintiff have not been prejudiced. Accordingly, the decision of the DHS is affirmed.
Counsel shall submit the appropriate order for entry.