**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 5 2003**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

BECKY C. WILSON,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Social Security Administration,
Commissioner,

      Defendant-Appellee.

No. 03-5026
(D.C. No. 01-CV-961-M)
(N.D. Okla.)

---

ORDER AND JUDGMENT *

---

Before **TYMKOVICH** , **HOLLOWAY** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-appellant Becky C. Wilson appeals from the district court's order affirming the Social Security Commissioner's denial of her application for disability insurance benefits under the Social Security Act. We exercise jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We affirm.

## I.

Plaintiff alleges that she has been disabled since September 1997 as a result of herniated cervical and lumbar disks and related back and leg pain. On July 1, 1999, Wilson filed an application for disability benefits, and eventually obtained a hearing before an administrative law judge (ALJ). In a decision dated January 23, 2001, the administrative law judge denied plaintiff's application, concluding that while her herniated disks constitute a severe impairment that prevents her from performing her past relevant work, a sufficient number of jobs that she can perform exist in the national economy. Specifically, the ALJ found that plaintiff retains the residual functional capacity (RFC) to perform light work so long as she is able to alternate sitting and standing every forty-five minutes, and that she is therefore capable of working as a cafeteria cashier, self service gas station attendant, toll booth attendant, and small town taxi operator.

In November 2001, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision. Plaintiff then filed a complaint in the United States District Court for the

-2-

Northern District of Oklahoma. In November 2002, a magistrate judge, sitting by consent of the parties under 28 U.S.C. § 636(c)(1), entered an order affirming the ALJ's decision. This appeal then followed.

## II.

"To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993) (citation omitted). The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. *Id.* (citations omitted).

Here, the ALJ denied benefits at step five. [1] At step five, when a claimant has established that he has a severe impairment which prevents him from returning to his past relevant work, "the burden shifts to the [Commissioner] to show that the claimant retains the residual functional capacity to do other work that exists in the national economy." *Id.* at 1487. The ALJ found that the

---

[1] The analysis of the first four steps required the ALJ to make the following findings about the claimant's condition: (1) that she was not currently engaged in substantial gainful activity; (2) that the she had a severe impairment; (3) that she was not, however, conclusively disabled; and (4) that she could not return to her past relevant work. *See Thompson*, 987 F.2d at 1487; 20 C.F.R. § 404.1520(a)-(e) (2000).

Commissioner met this burden, and therefore ruled that plaintiff is not entitled to disability benefits.

We review the ALJ's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards. *See O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). In making the substantial-evidence determination, we neither reweigh the evidence nor substitute our judgment for that of the ALJ. *See Thompson*, 987 F.2d at 1487. In addition, "[t]he scope of our review . . . is limited to the issues the claimant properly preserves in the district court and adequately presents on appeal." *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996).

In this appeal, plaintiff claims the ALJ erred by: (1) rejecting the opinions of her treating physicians regarding her residual functional capacity; (2) failing to find at steps two and three that she suffers from a severe mental impairment that meets or equals the mental disorder listing for Somatoform Disorders, listing 12.07; (3) failing to perform a proper credibility analysis regarding her subjective complaints of pain; and (4) failing to propound a proper hypothetical question to the vocational expert.

## A. Treating Physicians' Opinions

"An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Conversely, "a treating source's medical opinion . . . will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996).

An ALJ "may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*." *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000)) (emphasis in *McGoffin*). And "[w]hen an ALJ decides to disregard a medical report by a claimant's physician, he must set forth specific, legitimate reasons for his decision." *Drapeau,* 255 F.3d at 1213 (quotations omitted).

### 1. Dr. Royal

Dr. Royal is a pain management specialist, and he is board certified in internal medicine and anesthesiology. *See* Aplt. App., Vol. 2 at 289. Plaintiff saw Dr. Royal for treatment of her back and neck injuries, and the related pain and other limitations, on eighteen occasions between November 1997 and

November 2000. *Id.* at 185-88, 245-64, 310-11. In his medical records, Dr. Royal reported that plaintiff was suffering from "known L4-5 and L5-S1 discogenic disease and L5-S1 facet arthropathy and known cervical discogenic disease at C5-6 with C5 radiculopathy . . . and L5-S1 disc herniation." *Id.* at 311. In November 2000, Dr. Royal completed a residual functional capacity form stating that: (1) plaintiff has a lumbar disk herniation and spondylosis, and these conditions cause muscle spasms, tenderness, and decreased range of motion; (2) plaintiff has a cervical disk herniation and radiculopathy, and these conditions cause sensory abnormalities and muscle spasms; (3) plaintiff's symptoms are credible; (4) plaintiff needs to lie down frequently; (5) plaintiff "is likely to be frequently absent from work due to pain"; (6) during an eight-hour work day, plaintiff is limited to sitting for three hours, standing for two hours, and walking for one hour; and (7) plaintiff "is unable to perform gainful employment even with accommodation and is likely to remain in this capacity for the foreseeable future." *Id.* at 305-07.

The ALJ rejected Dr. Royal's opinion that plaintiff is unable to work, finding that this opinion is inconsistent with Dr. Royal's own medical records. [2]

---

[2] The ALJ also found that Dr. Royal's opinion is inconsistent with the description of plaintiff's daily activities that she provided during the hearing before the ALJ. *See* Aplt. App., Vol. 2 at 19. We do not need to address this aspect of the ALJ's decision, however, because we conclude that the ALJ's

(continued...)

*Id.* at 19. We conclude that the ALJ's finding that Dr. Royal's opinion is inconsistent with his medical records is supported by substantial evidence in the record.

To begin with, Dr. Royal's medical records indicate that there is no evidence of any significant spinal stenosis or neural foraminal encroachment in plaintiff's lumbar spine, and that she suffers from only a mild radiculopathy in her cervical spine. *Id.* at 187, 257, 258, 259, 260, 262, 263. Dr. Royal's records also indicate that there is no evidence of any significant neurological deficits in plaintiff's upper or lower extremities. *Id.* at 245, 246, 247, 248, 249, 252, 255, 257, 258, 310. In addition, while Dr. Royal reported that plaintiff had "a somewhat stiff posture of the neck and decreased range of motion in the neck and the low back," he also reported that she had "relatively fluid arm and leg movements." *Id.* at 251, 252.

We also note that, in November 1997, plaintiff informed Dr. Royal that "[s]he is able to [do] daily routine activities at home, such as the laundry, vacuuming and dishes, . . . [and] continues to try to enjoy social activities, but has curtailed that somewhat." *Id.* at 260-61. Importantly, there is no indication in Dr. Royal's medical records that plaintiff's ability to perform such activities

---

[2](...continued)
reliance on Dr. Royal's and Dr. Herman's medical records was a sufficient basis, standing alone, for rejecting Dr. Royal's opinion.

deteriorated in any significant respect during the time he treated her. To the contrary, Dr. Royal's records indicate that plaintiff responded reasonably well to his treatment, and it appears that her pain and other limitations were stabilized under his care.

In November 1998, plaintiff reported to Dr. Royal that she was "doing somewhat better . . . [and] now doing some volunteer work and feels that getting out of the house and pushing herself is going to be helpful to her." *Id.* at 251. In January 1999, Dr. Royal reported that, while plaintiff was "rather medication dependent to remain functional," she "continues to do reasonably well. She is certainly functional . . . [and] continues to be upbeat about the future and being able to get back to perhaps even working." *Id.* at 249. In September 1999, although plaintiff had to increase the dosage of her pain medication, she told Dr. Royal that she was "functional." *Id.* at 246. In December 1999, Dr. Royal reported that plaintiff was "doing well . . . and remains quite functional, although at a lower level than normal." *Id.* at 245. Finally, in March and June 2000, Dr. Royal reported that plaintiff "denies any new symptomatology. She states she is doing well, but would like to have a little better control of her muscle spasms and perhaps improvement in her sleep." *Id.* at 310, 311.

During this same time period, plaintiff was also seeing Dr. Herman, a family practitioner. *Id.* at 285. Dr. Herman's medical records confirm that

plaintiff responded positively to the treatment she received from Dr. Royal.

In December 1998, Dr. Herman reported that plaintiff was taking narcotics to alleviate her pain, and he stated that she had "decreased pain and . . . no other problems." *Id.* at 207. In August 1999, Dr. Herman reported that plaintiff's chronic pain was "well controlled" and she had "no complaints." *Id.* at 200. In October 1999, Dr. Herman reported that plaintiff "continues with Dr. Royal for her chronic pain and is doing well. At this time she is not back to work, but she is having days where she is functioning at a fairly high level." *Id.* at 199. In July 2000, Dr. Herman again reported that plaintiff "continues to see Dr. Royal and is doing well." *Id.* at 300.

Based on the information contained in the medical records of Dr. Royal and Dr. Herman, we hold that the ALJ did not err in determining that Dr. Royal's opinion that plaintiff is unable to work is inconsistent with other substantial medical evidence in the record. Thus, the ALJ properly rejected Dr. Royal's opinion.

### 2. Dr. Dubriwny

Dr. Dubriwny is board certified in psychiatry and neurology. *Id.* at 284. On September 30, 1999, Dr. Dubriwny completed a Mental Status Form in which he: (1) diagnosed plaintiff as suffering from a "pain [disorder] associated [with] psychological and organic factors"; and (2) concluded that plaintiff's "chronic

pain prohibits entering into work structure." *Id.* at 190. As the ALJ noted, however, Dr. Dubriwny examined plaintiff only once, in September 1997. *Id.* at 19, 191-93.

The ALJ concluded that because Dr. Dubriwny had not examined Plaintiff since 1997, his opinion of her condition was entitled only to limited deference. Given the other, contradictory evidence in the record the ALJ then rejected Dr. Dubriwny's conclusion that Plaintiff was unable to work. Plaintiff contends that the ALJ erred in not giving controlling weight to the opinion of Dr. Dubriwny.

"The threshold question is whether Dr. [Dubriwny] was in fact a 'treating physician' within the meaning of the regulations. If not, his opinion was not entitled to the presumption of controlling weight accorded to the properly supported opinion of a treating physician." *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003). The key inquiry for purposes of resolving this issue is whether plaintiff's relationship with Dr. Dubriwny was of sufficient duration and frequency:

> The treating physician doctrine is based on the assumption that a medical professional *who has dealt with a claimant and his maladies over a long period of time* will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.
> . . . .

-10-

A physician's opinion is therefore not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source. Absent an indication that an examining physician presented the *only* medical evidence submitted pertaining to the relevant time period, the opinion of an examining physician who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion.

*Id.* at 762-63 (quotations omitted) (emphasis in original).

On December 13, 1999, plaintiff was examined by Dr. Goodman, also a board-certified psychiatrist and neurologist, and Dr. Goodman prepared a consultative report on behalf of the Commissioner. *See* Aplt. App., Vol. 2 at 241-43, 288. In his report, Dr. Goodman concluded that plaintiff had "no independent psychiatric difficulty that would interfere with her ability to work." *Id.* at 243. Given Dr. Goodman's opinion, it is clear that Dr. Dubriwny did not present the only psychiatric evidence pertaining to plaintiff's alleged pain disorder.

Dr. Dubriwny's single examination of plaintiff is clearly the type of "fleeting relationship" that does not qualify him as a treating psychiatrist. *See Doyal*, 331 F.3d at 763. And because Dr. Dubriwny's opinion is not the only medical evidence regarding this issue, "the ALJ was not required to give [his] opinion controlling weight." *Id.* at 764.

Even though the ALJ was correct that Dr. Dubriwny was not a treating physician, "the ALJ was still required to consider his opinion, and to provide

specific, legitimate reasons for rejecting it." *Id.* (citations omitted). In his decision, the ALJ concluded that "[t]he objective medical evidence demonstrates that [plaintiff's] pain has improved significantly since she last visited Dr. Dubriwny and that passage of time significantly diminishes the weight given to his medical opinion." Aplt. App., Vol. 2 at 19. The ALJ gave greater credence to Dr. Goodman's opinion that plaintiff has no independent psychiatric impediment to holding down a job. Substantial evidence, particularly Dr. Goodman's report, supports the ALJ's decision on this point, and therefore the ALJ's rejection of Dr. Dubriwny's opinion was sufficiently supported in the record. *See Doyal* , 331 F.3d at 764.

## B. Alleged Mental Impairment and Listing 12.07

Plaintiff was diagnosed by Dr. Royal as suffering from a chronic pain disorder. [3] *See* Aplt. App., Vol. 2 at 245, 246, 247, 248, 249, 251, 310. Plaintiff claims the ALJ erred at step two of the evaluation process by failing to find that her chronic pain disorder is a separate severe mental impairment. Plaintiff further claims the ALJ erred at step three by failing to conduct a proper step-three analysis and by failing to find that her chronic pain disorder meets or equals the

---

[3]     Dr. Royal diagnosed plaintiff as suffering from chronic pain "syndrome," but we use the term "disorder" so as to be consistent with the terminology used in the mental disorder listings contained in 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00.

mental disorder listing for Somatoform Disorders, listing 12.07. [4] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (2000).

The ALJ's findings on both of these points are supported by substantial evidence and therefore must be affirmed. *See O'Dell*, 44 F.3d at 858. First, contrary to plaintiff's claims, the ALJ did consider her allegations of severe and disabling pain at steps two, four, and five of the evaluation process, and again as part of his analysis of the physical injuries to plaintiff's back and neck. *See* Aplt. App., Vol. 2 at 18. As a result, unless plaintiff can establish that the ALJ erred at step three by failing to find that she meets or equals the mental disorder listing for Somatoform Disorders, the ALJ's failure to consider her chronic pain disorder as a separate mental impairment is not reversible error.

This court must be able to conduct meaningful judicial review of an ALJ's step-three determination, and ALJs are therefore required at step three to make

---

[4] A Somatoform Disorder exists when there are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.07 (2000). The disorder causes a claimant to exaggerate her physical problems in her mind beyond what the medical data indicate. *See Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989). There is also a subgroup disorder called Somatoform Pain Disorder, which is indicated where: (1) pain is the predominate complaint; (2) the pain causes clinically significant impairment; (3) psychological factors have an important role in triggering the pain; (4) the symptom or deficit is not intentionally produced or feigned; and (5) the pain is not better accounted for by a mood, anxiety, or psychotic disorder. *See* American Psychiatric Assoc.: Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), at 485, 503 (4th ed. 2000).

specific findings and set out their reasons for accepting or rejecting evidence. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). Although the ALJ did not specifically refer to listing 12.07 in his decision, we nonetheless conclude that the ALJ's decision contains sufficient findings regarding plaintiff's mental status to constitute a proper step-three analysis.

As noted above, Dr. Goodman examined plaintiff in December 1999. In his consultative report, Dr. Goodman stated that "[d]iagnostically, her symptoms would certainly fit the category of a somatozation disorder although in the alternative she has been diagnosed as having 'chronic pain syndrome' with myofacial pain and discogenic disease." Aplt. App., Vol. 2 at 243. As part of his "final psychiatric diagnosis," Dr. Goodman then concluded that "[o]ne must consider somatoform disorder, somatozation type," but he did not make an affirmative diagnosis. *Id.* In fact, Dr. Goodman did not render any opinion as to whether plaintiff's pain disorder was the result of a psychiatric disorder or her underlying physical ailments, or a combination of both.[5] Instead, the only firm opinion set forth in his report is his conclusion that plaintiff had "no independent psychiatric difficulty that would interfere with her ability to work." *Id.*

---

[5] Similarly, in the Mental Status Form he completed in September 1999, Dr. Dubriwny diagnosed plaintiff as suffering from a "pain [disorder] associated [with] psychological and organic factors," Aplt. App., Vol. 2 at 190, but he did not give an opinion as to whether plaintiff was suffering from a Somatoform Disorder.

-14-

In his decision, the ALJ specifically noted Dr. Goodman's opinion that plaintiff did not suffer from a psychiatric disorder that would interfere with her ability to work. *Id.* at 17-18, 19. And, while the ALJ did not specifically cite listing 12.07, the ALJ did evaluate plaintiff's mental status based on the subsection "B" criteria in listing 12.07, and he specifically found that plaintiff did not demonstrate the type of limitations with respect to her social functioning and daily living activities that are necessary to satisfy the listing. *Id.* at 19-20. The ALJ's findings regarding the subsection "B" criteria are supported by substantial evidence in the record. We therefore conclude that the ALJ did not commit reversible error at step three of the evaluation process.

### C. Plaintiff's Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). An ALJ must set forth specific reasons for questioning the credibility of a claimant's subjective allegations of pain, however, and findings as to credibility must be closely linked to substantial evidence in the record. *Id.*

The ALJ found that plaintiff's "credibility is diminished substantially due to the difference between her reports to Dr. Royal and her testimony at the hearing." Aplt. App., Vol. 2 at 20. But the ALJ did not completely disregard

plaintiff's subjective allegations of pain. Rather, the ALJ found "that the pain in the low back and legs experienced by [plaintiff is] limiting but, when compared with the total evidence, not severe enough to preclude all types of work." *Id.* at 18.

We conclude that the ALJ's findings regarding plaintiff's credibility and the limitations imposed by the pain caused by plaintiff's neck and back injuries are supported by substantial evidence in the record. As noted above, there is no indication in Dr. Royal's medical records that plaintiff's ability to perform basic daily activities deteriorated in any significant respect during the time he treated her. Instead, Dr. Royal's records indicate that plaintiff responded reasonably well to his treatment, and, as noted on several occasions in Dr. Herman's medical records, it appears that her pain and other limitations were stabilized under Dr. Royal's care. Thus, we will not disturb the ALJ's credibility determination.

### D. ALJ's Hypothetical Question

When an ALJ propounds a hypothetical question to a vocational expert, the question "must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir. 1995). Plaintiff claims the ALJ failed to propound a proper hypothetical question to the vocational expert because the ALJ failed to include her alleged mental impairment in his hypothetical question. We disagree.

-16-

As discussed above, while Dr. Royal diagnosed plaintiff as suffering from a chronic pain disorder, there is insufficient evidence in the record to establish a basis for treating the disorder as a separate mental impairment for purposes of steps two, four, and five of the evaluation process. Moreover, the ALJ properly evaluated plaintiff's allegations of severe and disabling pain as part of his analysis of the physical injuries to plaintiff's back and neck. Accordingly, the ALJ did not err by failing to include plaintiff's alleged mental impairment in his hypothetical question to the vocational expert.

The judgment of the district court is AFFIRMED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge