Sybil BENNETT, Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.

No. CIV.A. 01–G–2238–S.

United States District Court, N.D. Alabama, Southern Division.

Oct. 22, 2003.

C Brian Davidson, Patton & Veigas PC, Birmingham, AL, Richard L Wyatt, Wyatt & Davidson PC, Homewood, AL, for Sybil Bennett, plaintiff.

Alice H Martin, U.S. Attorney, Linda S Trippe, U.S. Attorney's Office, Birmingham, AL, Mary Ann Sloan, Anita Kay Brotherton, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

### *MEMORANDUM OPINION*

GUIN, District Judge.

The plaintiff, Sybil Bennett, brings this action seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Supplemental Security Income Benefits.

Sybil Bennett filed an application for Supplemental Security Income benefits (SSI) on December 29, 1999, alleging an onset of disability as of January 27, 1999. Thereafter, plaintiff timely pursued and exhausted the administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).[1]

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth,* at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth,* at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for SSI benefits, a claimant must be "disabled." The Act defines "disabled" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 416.920(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy. 

*Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope,* at 477; *accord Foote v. Chater,* 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Jerry C. Shirley, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM PAIN OR OTHER SUBJECTIVE SYMPTOMS

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Foote,* at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote,* at 1560 (quoting *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991)). In

this circuit medical evidence of pain itself, or of its intensity, is not required.

While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself.* Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. Railroad Retirement Bd.,* 921 F.2d 1210, 1215 (11th Cir.1991)(parenthetical information omitted)(emphasis added). This same standard applies to testimony about other subjective symptoms. Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote* at 1561. Therefore, if a claimant testifies he suffers from pain or other subjective symptoms at level that would prevent work and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's testimony about pain or other subjective symptoms, he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of

reasons by the Secretary be supported by substantial evidence.

*Hale v. Bowen,* 831 F.2d 1007, 1012 (11th Cir.1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's testimony, or if his reasons are not supported by substantial evidence, the testimony of the plaintiff about his subjective symptoms must be accepted as true.

### FIBROMYALGIA

Fibromyalgia presents unique problems in the context of Social Security cases. These problems have been recognized by the courts. In *Sarchet v. Chater,* 78 F.3d 305 (7th Cir.1996), Chief Judge Posner examined fibromyalgia in detail:

[F]ibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. *See* Frederick Wolfe et al., "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 *Arthritis & Rheumatism* 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, *Current Medical Diagnosis & Treatment 1995* 708–09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause

the patient to flinch. All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet [the plaintiff] is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 *British Med.J.* 386 (1995); *Preston v. Secretary of Health & Human Services*, 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

78 F.3d at 306–307. Other courts have also recognized that fibromyalgia can be disabling. *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir.1998)("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling.").

In spite of its illusive nature, the presence of fibromyalgia can be objectively verified in some cases. As noted in *Sarchet*, there are tender areas, or "trigger points," which are well defined and cause pain upon palpitation. Objective, clinical support for a diagnosis of fibromyalgia may also be present if injections of pain medication to the trigger points are prescribed. *Kelley* at 589 (diagnosis of fibromyalgia is clinically supported by trigger point injections). Clearly, then, fibromyalgia if properly diagnosed satisfies the pain standard.

## DISCUSSION

The ALJ in the present case found the plaintiff had the following medically determinable conditions: sacroiliac joint dysfunction, myofascial pain syndrome, fibromyalgia, and depression. He determined these conditions were severe within the meaning of the Commissioner's regulations. However, he found they would not prevent her from performing her prior relevant work. The plaintiff has alleged that she is disabled due to back pain and depression. The plaintiff's objective medical conditions as found by the ALJ could reasonably be expected to produce both disabling pain and disabling depression. A finding to the contrary would not be supported by substantial evidence. Moreover, the ALJ actually made a credibility determination, which would not have been necessary had he found these conditions did not satisfy the Eleventh Circuit's pain standard.

## PAIN

■ The reasons articulated by the ALJ for refusing to credit the plaintiff's pain testimony are not supported by substantial evidence. The reasons recited by the ALJ, and an explanation of why those reasons are not supported by substantial evidence, follows:

- **The plaintiff testified Lortab "takes the edge off the pain". [R 12]**

The plaintiff testified that when she takes Lortab, the pain is reduced to an eight, on a scale of one to ten. [R 41] A reasonable fact finder would not conclude that this means medication reduced the plaintiff's pain to a nondisabling level.

- **The ALJ observed the plaintiff did not have difficulty sitting during the hearing. [R 12]**

The Eleventh Circuit has held that " 'sit and squirm' jurisprudence has no place in this circuit." *McRoberts v. Bowen* 841 F.2d 1077, 1081 (11th Cir.1988). That is precisely what ALJ Shirley did in the

present case. An ALJ is not a trained clinician, and should not attempt to make clinical judgments about the presence of pain based upon a short one-time observation of the plaintiff at the hearing.

- **The plaintiff was able to ascend and descend 30 stairs at a functional capacities evaluation (FCE). [R 12]**

This was cited following the ALJ's recitation of the plaintiff's testimony concerning her need to rest when she walks up the six steps to her home. Her actual testimony was as follows:

Q: How many stairs can you climb at one point and time before you have to stop?

A: I have six steps going in my trailer, and usually when I get at the top one I stand there for a few minutes.

[R 38] The FCE report contains the following description of the plaintiff's stair climbing test:

The client was able to ascend and descend stairs of 30 steps with moderate limp and slowed ability to advance involved lower extremity onto the step. This was slow and irregular with an antalgic[2] presentation utilizing arm rails only descending on the last 10 steps. [R 137]

The FCE notes the plaintiff was slow and irregular in climbing and descending and had an antalgic presentation. The plaintiff did not testify that she could only climb six stairs. She only offered her difficulty climbing the stairs to her trailer as an example. No rational fact finder would rely on this to discredit the plaintiff's testimony.

**2.** Antalgic is defined as "counteracting or avoiding pain, as a posture or gait assumed so

- **None of the plaintiff's "physicians have recommended surgery which would indicate the claimant's condition is not as severe as alleged." [R 12]**

The ALJ cites to no medical evidence of record to support his clinical opinion that because no surgery was recommended, the plaintiff could not suffer from disabling pain. The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996). It is particularly troubling that the ALJ recited the lack of a surgical recommendation while at the same time finding the plaintiff suffered from fibromyalgia and myofascial pain syndrome, neither of which is amenable to surgical treatment.

- **That the plaintiff was noncomplaint with recommended treatment.**

The record does show the plaintiff was not always fully compliant with recommended treatment. In particular, the treatment notes from Dr. Fessler in January 2000 suggest the plaintiff was not going for physical therapy or taking the prescribed medication. [R 181] On February 24, Dr. Fessler again notes her noncompliance, but his treatment note also reflects that her pain was "markedly exacerbated on the 2nd day after she began physical therapy." [R 180] The medical records also reveal she did attend physical therapy sessions on a number of occasions. [R 188–200] These notes contain numerous references to the plaintiff experiencing pain during her physical therapy sessions.

The plaintiff underwent at least two sacroiliac joint injections in 1999 in an effort to relieve her pain, without success. [R

as to lessen pain." *Dorland's Illustrated Medical Dictionary* 90 (27th Edition).

130–134] There are also treatment notes from the Pain Treatment Center at the Kirklin Clinic showing numerous visits in the year 2000. These notes show an aggressive treatment regimen and do not indicate the plaintiff was noncompliant.

Although the plaintiff may not have been fully compliant with prescribed treatment initially, her longitudinal history of complaints and attempts at relief support the plaintiff's pain allegations. *See* SSR 96–7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.").

Additionally, it must be noted the plaintiff complains of disabling clinical depression. Her failure to fully follow prescribed treatment at times might be a symptom of this depression. The Social Security Administration's consulting psychologist included the following in his conclusion: "Comprised insight and judgment are evidenced by failure to maintain active involvement in therapy and/or in self-help groups." [R 186]

- **The plaintiff only had one emergency room visit because of her pain.**

■ To suggest that only one emergency room visit due to pain means the plaintiff's complaints of pain should not be credited shows the ALJ's utter lack of fairness. The plaintiff did have numerous visits to various doctors in an attempt to find relief from her pain. She did in fact report to her physical therapist on one occasion that her pain the previous day had been so severe that she would have gone to the emergency room, but she did not have transportation. [R 200] It is not necessary

for a plaintiff's pain to render her bed ridden in order for her to be disabled.

[S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. *Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity . . . .* It is well established that sporadic or transitory activity does not disprove disability.

*Smith v. Califano,* 637 F.2d 968, 971–72 (3rd Cir.1981)(emphasis added). It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances. In *Easter v. Bowen,* the court observed as follows:

Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. *See Yawitz v. Weinberger,* 498 F.2d 956, 960 (8th Cir.1974). What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world. *Douglas v. Bowen,* 836 F.2d 392, 396 (8th Cir.1987) (quoting *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir.1989). The *Easter* court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting *Rhines v. Harris,* 634 F.2d 1076, 1079 (8th Cir.1980)).

From the above it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence. Therefore, those allegations must be accepted as true. The

expert vocational testimony adduced at the ALJ hearing establishes that a person with pain at the level experienced by the plaintiff would be unable to perform any work.

## DEPRESSION

The plaintiff also alleges she is disabled due to depression. Her treating physicians noted the possibility of depression. On December 8, 1999, Dr. Fessler, in a letter stated the plaintiff "appears to be depressed." [R 182] On March 24, 1999, Dr. Kezar's diagnostic impression included "[p]sychosocial factors affecting physical condition." [R 144] There are two consultative psychological evaluations in the record.

Dr. Bray, a psychologist, examined the plaintiff at the request of the Social Security Administration. Dr. Bray observed the plaintiff's affect was "gloomy, sad, depressed, and tense." [R 185] Dr. Bray found this "congruent with [her] stated mood." [R 185] It was Dr. Bray's opinion that the plaintiff was "experiencing or has within the recent past experienced symptoms which would qualitatively and quantitatively support a diagnosis of a mood disorder." [R 185] He noted that those symptoms would include "memory impairment, depressed mood, sleep abnormalities, psychomotor agitation or retardation, feelings of worthlessness/guilt, and impaired concentration." [R 185–86] His diagnosis was "Major Depressive Disorder, Single Episode, Severe without Psychotic Features." [R 186] Dr. Bray's conclusion was as follows:

It is my opinion that Ms. Bennett was an adequately reliable informant for current purposes. Her appraisals tended to corroborate clinical observations and information obtained elsewhere. The claimant's depression is likely to lead to conflicts or difficulty interacting with supervisors or coworkers, difficulty maintaining focus and adhering to work procedures, and difficulty remembering details at work. The claimant's depression is judged to be secondary to discomfort stemming from her medical condition and from decline or loss of independence, and not secondary to a primary mental disorder. A significant improvement in her medical condition and a return to premorbid functioning would likely result in a significant remission of mental health symptomology. Comprised insight and judgment are evidenced by failure to maintain active involvement in therapy and/or in self-help groups.
[R 186]

The plaintiff was also examined by Dr. Alan D. Blotcky, Ph. D., at the request of her attorney. Dr. Blotcky's diagnosis was "major depressive disorder." [R 245] Dr. Blotcky did not believe the plaintiff was malingering and found her impairments reasonably consistent with the symptoms and functional limitations described in his evaluation. [R 247] Dr. Blotcky opined that the plaintiff's impairments or treatment would cause her to be absent from work more than three times per month. [R 249] Dr. Blotcky indicated the plaintiff's ability to function would be "seriously limited, but not precluded" in the following areas:

- Maintain attention for two hour segment
- Complete a normal workday and workweek without interruptions from psychologically based symptoms
- Respond appropriately to changes in a routine work setting
- Deal with normal work stress

[R 250] Dr. Blotcky indicated the plaintiff would suffer a marked degree of limitation in maintaining social functioning, would suffer frequent deficiencies of concentration, persistence or pace resulting in a failure to complete tasks in a timely manner, and would have repeated episodes of deterioration or decompensation in work

or work-like settings which would cause her to withdraw from that situation or to experience exacerbation of signs and symptoms. [R 252]

Listing 12.04 concerns mental disorders that are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome." The listing requires that a claimant meet a two part test. The first part (the "A" criteria of the listing) requires "[m]edically documented persistence, either continuous or intermittent", of one of the following:

1. Depressive syndrome characterized by at least four of the following:

   a. Anhedonia or pervasive loss of interest in almost all activities; or

   b. Appetite disturbance with change in weight; or

   c. Sleep disturbance; or

   d. Psychomotor agitation or retardation;

   e. Decreased energy; or

   f. Feelings of guilt or worthlessness; or

   g. Difficulty concentrating or thinking; or

   h. Thoughts of suicide; or

   i. Hallucinations, delusions, or paranoid thinking.

Listing 12.04 requires in addition to establishing the presence of an affective disorder, that the disorder results in functional limitations as set forth in 12.04(B) (the "B" criteria of the listing). In order to satisfy the "B" criteria, a claimant must demonstrate that his disorder results in at least two of the following:

1. Marked[3] restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or

4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

The two consulting psychologists reports, if credited, establish that the plaintiff met the requirements of Listing 12.04. Dr. Bray found the plaintiff's symptoms included "memory impairment, depressed mood, sleep abnormalities, psychomotor agitation or retardation, feelings of worthlessness/guilt, and impaired concentration." [R 185–86] This satisfies the "A" criteria of Listing 12.04. Dr. Blotcky found marked restrictions in three of the four "B" criteria. Drs. Bray and Blotcky provided the only psychological evaluations contained in the record. Their findings are not contradictory and together support a finding that the plaintiff met Listing 12.04. Nonetheless, the ALJ refused to credit these reports, noting that both consultants described the plaintiff as "able to maintain attention and concentration and she demonstrated logical and orderly thinking." [R 13] A rational fact finder, viewing each consultant's reports as a whole, could not come to the conclusion that these psychologists did not believe the plaintiff suffered from depression at a disabling level. The ALJ also noted the

---

**3.** For the purposes of the mental disorder listings, "marked" means "more than moderate but less than extreme." Furthermore, a "marked limitation may arise when several activities or functions are impaired or even when only one is impaired, so long as the degree of limitation is such as to seriously interfere with the ability to function independently, appropriately and effectively." 20 C.F.R. pt. 404, Subpt. P, Appendix 1, § 12.00.

plaintiff failed to follow up with a psychiatrist as recommended by her treating physicians. [R 13] This likewise is insufficient to allow a rational fact finder to conclude the plaintiff did not suffer depression at a disabling level as described by the two consulting psychologists. Dr. Bray, the Social Security Administration's consulting psychologist, concluded that the plaintiff's "[c]omprised insight and judgment are evidenced by failure to maintain active involvement in therapy and/or in self-help groups." [R 186] Sadly, the symptoms of mental disorders often include an inability to seek out the treatment and help necessary to treat such disorders.

There is no medical evidence of record contradicting the findings of Drs. Bray and Blotcky. The ALJ merely refused to credit their opinions based upon his own diagnostic impression. This is impermissible. Therefore, the reports of Drs. Bray and Blotcky establish that the plaintiff meets Listing 12.04. A contrary finding is not supported by substantial evidence.

In addition to meeting Listing 12.04, the expert vocational testimony adduced at the ALJ hearing establishes the plaintiff is disabled due to her depression. The vocational expert (VE) was asked the following hypothetical question:

Q: [A]ssume for me that this person would have conflicts and/or difficulty with supervisors and/or of [sic.] coworkers. This person has difficulty maintaining focus, has difficulty maintaining pace and persistence, and has difficulty adhering to work procedure and remembering details· at work. Would there be significant employment in the national or regional economy that this person could perform?

A: Would difficulty be classified as greater than moderate?

Q: Yes, sir.

A: Assuming His Honor should find that to be the case, it would be moder-ately severe or greater, then there would not be any work that such a person could do.

[R 49] This hypothetical question accurately reflects the restrictions found by the SSA's own consulting psychologist, Dr. Bray. Based upon this testimony and the findings of Dr. Bray, which were not properly discredited, the plaintiff is disabled.

The VE was also questioned about the impact of absenteeism on the plaintiff's ability to work:

Q: [A]ssume that this person would have to miss two work days a month due to pain. Would that change your opinion?

A: Typically from a vocational standpoint if a person misses more than 25, 24, 25 days in a 12 month work period that would preclude work activity. So that would be right on the borderline.

[R 48] Dr. Blotcky was of the opinion that the plaintiff would miss more than three days per month due to her mental impairments. Therefore, since his opinions were not properly discredited, the plaintiff is disabled based upon the VE testimony.

## CONCLUSION

For all of the reasons above, the plaintiff is disabled within the meaning of the Social Security Act. When the evidence is considered as a whole, it is clear that substantial evidence does not support the ALJ's finding that the plaintiff is not disabled due to pain and depression. An appropriate order will be entered contemporaneously herewith.

## *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered·contemporaneously herewith, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of the Social Security Administra-

tion be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed.